IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT THOMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 02:02cv1972 |
| ) | |
| AIM DEDICATED LOGISTICS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

August 4, 2005

Before the Court for disposition are the cross-motions for summary judgment filed by defendant Aim Dedicated Logistics ("Aim" or "Defendant") (*Document No. 20*) and plaintiff Robert Thompson ("Thompson" or "Plaintiff") (*Document No. 21*). After consideration of the submissions of the parties, the Court will deny both motions for summary judgment.

BACKGROUND

The facts surrounding this litigation are undisputed. On August 24, 1998, Plaintiff began his employment with Defendant as a commercial truck driver who serviced an Aim customer, "HBC", located in Pittsburgh, Pennsylvania. In March 2001, Plaintiff voluntarily moved to Canton, Ohio, and was transferred to Aim's Akron, Ohio facility. From March 2001, through the date of his discharge, Plaintiff serviced an Aim customer account known as Universal Forest Products ("UFP"). Although Plaintiff operated from UFP's Lodi, Ohio facility, he remained an employee of Aim at all times relevant to this litigation.

To do his work for UFP, Plaintiff would drive from his home in Canton, to Aim's Akron, Ohio, terminal where he would pick up a tractor-trailer. Then, he would drive to the

UFP terminal, where he would regularly arrive by 7:00 a.m. He would be dispatched by a UFP representative; Plaintiff's actual contact with his employer, Aim, was very minimal.

On Friday, May 25, 2001, Thompson reported to work at 7:00 a.m. at UFP's facility in Lodi, Ohio, as he normally did. He met with William Hathaway, the UFP dispatcher, and was sent on his first delivery of the day to Cuyahoga Falls, Ohio. Unbeknownst to anyone at Aim or UFP, Plaintiff was extremely depressed that day because of the failure of his relationship with his girlfriend, and he had been crying much of the time while driving to the UFP terminal and from there while driving to his delivery at Cuyahoga Falls.

After Plaintiff made his first delivery, he called Mr. Hathaway and told him that he was sick and felt unsafe to drive. Mr. Hathaway expressed displeasure, but told Plaintiff that he would take care of the next load.[1] Plaintiff then drove to Aim's Akron terminal, where he spoke to no one. He left the tractor-trailer, got into his own car, and drove away. On his drive back to Canton, he continued to cry over the situation. He then developed a plan to meet his girlfriend in the parking lot of a Home Depot where he intended to commit suicide in front of her.

As arranged, Plaintiff met his girlfriend in the parking lot and as soon as she pulled up, Thompson pulled out a gun and shot himself. As a result of his suicide attempt, Thompson suffered a gun-shot wound to his left shoulder and was taken by ambulance to the hospital.

On Sunday, May 27, 2001, from his hospital room, Plaintiff attempted by telephone to reach James R. Farmer, the regional logistics coordinator for Aim. Plaintiff was unable to

---

[1] Plaintiff testified during his deposition that he called William Hathaway from his cell phone and said "I'm sick; I'm unsafe to drive." Mr. Hathaway initially replied "shit" and then said "All right. Fine. We'll take care of it." Pl's depo. at 39.

2

speak with Mr. Farmer, but left a voicemail message which informed Mr. Farmer that he was in the hospital. The next day, Monday, May 28, 2001, Mr. Farmer returned the call and Plaintiff told him that he was in the hospital and unable to return to work that week. Plaintiff told Mr. Farmer that he had been shot, but did not give any details.

The following morning on Tuesday, May 29, 2001, Mr. Farmer called again. During this conversation, Plaintiff told Mr. Farmer that he was "sick and unsafe to drive the truck. And I tried to commit suicide." Pl's Depo. at 61.

On May 30, 2001, Mr. Farmer again called Plaintiff while he was in the hospital and informed him that he was being terminated effective May 25, 2001, for abandoning a load under dispatch. *See* Termination Letter, Exhibit B, Def's Mot. for Summ J.[2] Defendant contends that Plaintiff's employment was terminated because he violated a clear company policy regarding the abandonment of a vehicle while under dispatch.

Plaintiff alleges that his termination interfered with his rights under the FMLA and that Aim failed to properly investigate the reason he left work on May 25, 2001.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[2] Plaintiff received a termination letter, dated May 30, 2001, which states in relevant part: "This letter serves as notice that effective May 25, 2001, we accept your resignation for Aim Dedicated Logistics when you quit your load under dispatch."

judgment as a matter of law." Fed. R. Civ. P. 56(c). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 249.

### DISCUSSION

The Family Medical Leave Act ("FMLA"or the "Act") grants an eligible employee the right to take up to twelve (12) weeks of unpaid leave for a serious health condition that renders the employee unable to perform the functions of his or her job. 29 U.S.C. § 2612(a)(1)(D).[3] An eligible employee with a serious health condition who has given the required notice has the right, upon returning from leave, to be restored to the position previously held or an equivalent position with equivalent pay, benefits, and other conditions of employment. *Id.* at § 2614. It is unlawful under the Act for an employer to interfere with or restrain any of the rights provided by the Act and to discharge any individual for opposing any practice made unlawful by the Act. *Id.* at § 2615(a).

Courts have recognized that the FMLA creates two distinct causes of action: (i) an "entitlement" or "interference" cause of action and (ii) a "retaliation" cause of action. An entitlement or interference claim arises under 29 U.S.C. § 2615(a)(1), which makes it unlawful

---

[3] The Act defines an "eligible employee" as one who has been employed for at least 12 months by the employer and for at least 1,250 hours during the previous 12 month period. 29 U.S.C. § 2611(A).

for an employer to "interfere with, restrain, or deny" an employee's rights under the FMLA. *Bearley v. Friendly Ice Cream Corp.*, 322 F. Supp. 2d 563, 570 (M.D. Pa. 2004). It is the plaintiff's burden to establish that (i) he is an eligible employee under the FMLA, (ii) defendant is an employer subject to the requirements of the FMLA, (iii) the employee was entitled to leave under the FMLA, (iv) the employee gave notice to the defendant/employer of his intention to take FMLA leave, and (v) the defendant/employer denied him the benefits to which he was entitled under the FMLA. *Bearley*, 322 F. Supp. 2d at 571; *Parker v. Hahnemann University Hosp.*, 234 F. Supp. 2d 478, 483 (D.N.J. 2002). Interference claims are not about discrimination; the issue is simply whether the employer provided its employee with the entitlements set forth in the FMLA such as a twelve week leave or reinstatement after taking a medical leave. *Parker,* 234 F. Supp. 2d at 485. An interference claim also arises if an employee can demonstrate that his employer did not advise him of his rights under the FMLA and that this failure to advise rendered him unable to exercise his leave rights in a meaningful way thereby causing injury. *Conoshenti v. Public Service Electric & Gas Co.*, 364 F.3d 135, 143 (3d Cir. 2004).

The second type of recovery under the FMLA is for "retaliation." A retaliation claim arises under 29 U.S.C. § 2615(a)(2), which makes it unlawful for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" under the FMLA.

The matter *sub judice* is an interference claim in that Plaintiff alleges that "the actions of the Defendant in discharging the Plaintiff for the exercise of rights under FMLA are in violation of Section 105(a)(1) of the FMLA, 29 U.S.C. § 2615(a)(1)." *See* Paragraph 20 of

the First Amended Complaint (Document No. 8).  Defendant and Plaintiff both have filed motions for summary judgment on Plaintiff's FMLA interference claim.

Aim argues that Plaintiff is not protected by the FMLA because (i) he cannot establish that he had a "serious health condition" at the time of his discharge and (ii) he failed to provide Aim with the requisite notice under the FMLA.  Therefore, Aim maintains that it could not have interfered with any of Plaintiff's FMLA rights because he had none.  In contrast, Plaintiff argues that on May 25, 2001, he developed a "serious health condition," which resulted in the need for medical leave, and that such medical leave was not "foreseeable" within the meaning of FMLA.  To resolve this matter, the Court will review the language of the FMLA, the implementing regulations proscribed by the Department of Labor, and relevant case law.

The FMLA entitles an eligible employee to up to 12 weeks of unpaid leave per year for a serious health condition which renders the employee unable to perform the functions of his position.  29 U.S.C. § 2612(a)(1)(D).  A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves - (A) inpatient care in a hospital . . . ."  29 U.S.C. § 2611(11)(A).  The regulations define "inpatient care" as an overnight stay in the hospital which results in any period of incapacity from work.  29 C.F.R. § 825.114(a)(1).

When the necessity for leave is foreseeable, the Act requires the employee to provide his employer with at least thirty (30) days notice before the leave is to begin.  *Id.* § 2612(e)(1). Although the Act itself is silent on the notice required for unforeseeable leave, the regulations, promulgated by the Secretary of Labor, state that when the leave is unforeseeable notice must

6

be provided as soon as practicable. 29 C.F.R. § 825.303. The phrase "as soon as practicable" is defined under the regulations "as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case . . . [and] ordinarily would mean at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee." 29 C.F.R. § 825.302(b). If leave is unforeseeable, an employee must give notice to the employer within one or two days of learning of the need for leave, except where extraordinary cases prevent such notice. 29 C.F.R. § 825.303.

Plaintiff has moved for partial summary judgment on the issue of liquidated damages based upon the Defendant's alleged lack of good faith in properly investigating the reason that Plaintiff left work on May 25, 2001.

A. <u>Motion for Summary Judgment Filed by Defendant</u>

Defendant argues that Plaintiff's claim fails as a matter of law because Plaintiff is not entitled to FMLA protection because he (i) cannot establish that he suffered from a "serious health condition" at the time of his discharge and (ii) failed to give the requisite notice.

Defendant has not cited, nor has the Court through independent research discovered, any authority for the proposition that an employer must have prior knowledge of an employee's "serious health condition." It is not disputed that Defendant did not know that Plaintiff suffered from depression at the time it first learned that Plaintiff had "abandoned" his vehicle. However, the Court finds that a jury could reasonably conclude that Defendant was well aware that Plaintiff suffered from "a serious health condition" when it advised Plaintiff, on May 30, 2001, that he was terminated.

The Act defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves - (A) inpatient care in a hospital . . . ." 29 U.S.C. § 2611(11)(A). The regulations define "inpatient care" as an overnight stay in the hospital which results in any period of incapacity from work. 29 C.F.R. § 825.114(a)(1). The record evidence reflects that Plaintiff informed James Farmer on Monday, May 28, 2001, that he had been shot and was unable to return to work and that on Tuesday, May 29, 2001, Plaintiff informed James Farmer that he had attempted to commit suicide. At that time, the uncontradicted evidence shows that Defendant knew that Plaintiff had an inpatient admission to the hospital which commenced on Friday, May 25, 2001. The Court concludes that a jury could reasonably find that Defendant knew that Plaintiff suffered from a "serious health condition" at the time it advised him of his termination.

Defendant next argues that Plaintiff failed to provide Aim with the requisite notice under the FMLA. The Court notes that whether an employee has given adequate notice is generally an issue of fact for the jury to decide. *See Zawadowicz v. CVS Corp*., 99 F.Supp.2d 518, 529 (D.N.J. 2000).

Defendant argues that Plaintiff was terminated because he failed to call off prior to "abandoning" his load. In fact, Defendant argues that Plaintiff did not provide any notice to Aim that he needed to take leave. Rather, the only person Plaintiff called on May 25, 2001, was William Hathaway, who was not employed by Aim. Plaintiff counters that he was never told that he had to call off to James Farmer or to central dispatch at Aim. Rather, Plaintiff testified that when he first began work at HBC, he was told to contact the Aim dispatcher and if she was unavailable to then contact HBC. Plaintiff also testified that when he transferred to the Ohio

facility, his contact with Aim was minimal and that "sometimes [he] didn't talk to them for weeks." Pl's depo. at 30. Additionally, Plaintiff testified that the only reason that he might talk to Aim dispatch after his move to Ohio was for a problem with his log or his payment. *Id.* Therefore, on May 25, 2001, Plaintiff called the dispatcher for UFP, William Hathaway. The Court finds that a genuine issue of material fact exists as to whether Plaintiff was ever advised of the proper "call off procedure."

In the alternative, it is undisputed that Plaintiff attempted without success to reach James Farmer on Sunday, May 27, 2001. On Monday, May 28, 2001, the first business day after Plaintiff's "abandonment" of his vehicle, Plaintiff spoke with James Farmer and informed him that he had been shot and was unable to return to work. The Act and its regulations provide that if the necessity for leave is unforeseeable, notice must be provided as soon as practicable. 29 C.F.R. § 825.303. The Court finds and rules that sufficient evidence exists from which a jury could reasonably conclude that Plaintiff gave notice to Defendant of his need for medical leave as soon as was practicable.

Accordingly, Defendant's motion for summary judgment will be denied.

B.  <u>Motion for Partial Summary Judgment Filed by Plaintiff</u>

Plaintiff has moved for partial summary judgment on the issue of liquidated damages based upon Defendant's alleged lack of good faith in properly investigating the reason that Plaintiff left work on May 25, 2001.

Under the FMLA, the defendant employer "shall be liable to any eligible employee affected [by a violation of the Act] . . . [for] an additional amount as liquidated damages equal

to the sum of the amount" of other damages and interest awarded pursuant to § 2617(a)(1)(A)(i) and (ii) of the Act. 29 U.S.C. § 2617(a)(1)(A)(iii). Plaintiff argues that it is entitled to liquidated damages because Defendant cannot prove that "it acted in good faith and had reasonable grounds for believing that it did not violate the FMLA." Pl's Br. at 13.

However, as discussed *supra*, a genuine issue of material fact exists for the jury to determine as to whether Defendant violated the FMLA. Accordingly, Plaintiff's motion for partial summary will be denied.

An appropriate Order follows.

McVerry, J.

cc:    Lawrence R. Chaban, Esquire
       lchaban@rjslegal.com

       Scott C. Essad, Esquire
       sessad@hendersoncovington.com